**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **F.M.S.,** | : | |
| **Petitioner** | : | **No. 1:25-cv-02061** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **CRAIG LOWE, et al.,** | : | |
| **Respondents**[1] | : | |

**MEMORANDUM**

Before the Court is Petitioner F.M.S. ("Petitioner")'s petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his immigration detention.  (Doc. No. 1.)  For the reasons that follow, the Court will grant the petition in part.

## I.   BACKGROUND[2]

Petitioner is a citizen of Venezuela.  (Doc. No. 1 ¶ 20.)  He is currently incarcerated at

---

[1]  Petitioner names several Respondents, including United States Department of Homeland Security ("DHS") and United States Department of Justice ("DOJ") officials.  (Doc. No. 1 ¶¶ 6–12.)  Respondents assert that, under the default rule, "the only proper respondent in this case is Craig Lowe, the Warden of Pike County Correctional Facility."  (Doc. No. 13 at 1 n.2.)  "The federal habeas statute straightforwardly provides that the proper respondent is 'the person' having custody over the petitioner . . . and the custodian is 'the person.'"  Rumsfeld v. Padilla, 542 U.S. 426, 427 (2004) (quoting 28 U.S.C. §§ 2242, 2243).  As a different court in this District recently found—in a nearly-identical circumstance—"the only proper respondent in this case is [Pike County Warden] Craig Lowe . . . [h]owever, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Correa on behalf of Immigration and Customs Enforcement."  See Acevado Correa v. Lowe, No. 3:26-cv-00581, 2026 WL 852078, at *1 (M.D. Pa. Mar. 27, 2026).  The Court will thus dismiss the remaining Respondents from this action.  But see Patel v. Rife, No. 1:26-cv-00702, 2026 WL 927229, at *1 (M.D. Pa. Apr. 6, 2026) (finding that "[b]ecause Petitioner has named a proper respondent, the court does not deem it necessary to determine whether the other named Respondent should be dismissed").

[2]  The Court recites the facts as articulated by Petitioner in his petition (Doc. No. 1), accompanying exhibits (Doc Nos. 1-1 through 1-9), traverse (Doc. No. 14), and status report (Doc. No. 18), and by Respondents in their response (Doc. No. 13) and accompanying exhibits (Doc. Nos. 13-1 through 13-12).  The facts are uncontested unless otherwise noted.

Pike County Correctional Facility in Lords Valley, Pennsylvania ("Pike County"). (Id. ¶ 45.) Petitioner asserts that, before fleeing Venezuela, he was subjected to imprisonment, torture, rape, and sexual abuse for his opposition to the regime of former President Nicolas Maduro. (Doc. No. 1 ¶¶ 20–31.) Upon his release from imprisonment in Venezuela, Petitioner fled the country. (Id. ¶¶ 32–35.) Petitioner arrived in the United States and presented himself at the Paso del Norte Port of Entry in El Paso, Texas in June or July 2023. (Id. ¶ 36, Doc. No. 13 at 2.) United States Immigration and Customs Enforcement ("ICE") detained Petitioner at his appointment, processed him for expedited removal under 8 U.S.C. § 1225(b)(1), and issued an order of expedited removal. (Doc. No. 1 ¶ 37.) Petitioner was detained at the Otero County Processing Center in New Mexico. (Id. ¶ 37.)

On September 13, 2023, Petitioner was provided a credible fear interview and was found to have a credible fear of persecution. (Id.) In accordance with the credible fear determination, Petitioner was no longer subject to expedited removal, and DHS issued to Petitioner a Notice to Appear before an immigration judge, which charged him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Id.; Doc. No. 13 at 2.) On or about October 9, 2023, ICE released Petitioner from detention via a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5). (Id. ¶ 38.) Prior to his release, ICE fitted Petitioner with an ankle monitor, which he wore until ICE removed it in February 2025, and he appeared regularly for check-ins with DHS and shared weekly photographs throughout that time period. (Id. ¶¶ 38–39.) On October 24, 2024, an immigration judge issued a removal order in absentia after Petitioner did not appear for a hearing, although Petitioner asserts that he did not receive notice of the hearing and continued to comply with ICE check-in requirements after the in absentia order. (Id. ¶¶ 40–43; Doc. No. 13 at 3.)

On March 14, 2025, ICE took Petitioner into custody, and he has remained in ICE detention since that day.  (Doc. No. 13 at 4.)  In the instant petition, Petitioner asserts that ICE did not provide him notice that it intended to revoke his grant of humanitarian parole, nor did it provide an explanation for the revocation and his re-detention.  (Doc. No. 1 ¶ 44.)  On March 21, 2025, Petitioner filed a motion to reopen his removal proceedings.  (Id. ¶ 46.)  An immigration judge ("IJ") granted the motion on May 23, 2025, finding that Petitioner had not received proper notice of the October 2024 hearing.  (Doc. No. 1 ¶ 46.)  On November 5, 2025, an IJ granted Petitioner's application for withholding of removal but denied his application for asylum.  (Doc. No. 13 at 5; Doc. No. 14 at 2.)  On November 12, 2025, ICE served Petitioner a notice of third country removal and advised him that it intended to remove him to Mexico.  (Id.)

Petitioner then filed a motion to reopen proceedings, which the IJ denied on December 3, 2025.  (Doc. No. 14 at 2.)  Petitioner filed a new motion to reopen proceedings the next day, and appealed the IJ's denial of asylum to the Board of Immigration Appeals ("BIA") on December 5, 2025.  (Doc. No. 18 at 1.)  The IJ denied Petitioner's second motion to reopen proceedings, but the BIA accepted Petitioner's appeal of the IJ's denial of asylum.  (Id.)  Petitioner represents that, as such, his "detention continues to be governed by § 1225(b) and is unlikely to end soon." (Id. at 2.)

During Petitioner's detention, he reports that he has received "inadequate food," "inadequate medical care," and has "suffered two incidents of sexual assault."  (Doc. No. 1 ¶¶ 49.)  After a psychological evaluation in August 2025, a doctor concluded that he suffers from major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder stemming from his experiences in Venezuela and his time in detention at Pike County.  (Id. ¶ 51.)

Petitioner asserts four counts against Respondents pertaining to the revocation of his parole and his re-detention: violation of the Immigration and Nationality Act ("INA") and the corresponding regulations (Count I); violation of the Administrative Procedure Act ("APA") (Count II); and violation of Petitioner's constitutional due process rights (Counts III–IV). (Doc. No. 1 at 38–41.) Respondents filed their response to the petition on November 21, 2025 (Doc. No. 13), to which Petitioner filed a traverse on December 5, 2025 (Doc. No. 14). Petitioner later filed a status report. (Doc. No. 18.) The case was initially referred to Magistrate Judge Schwab, who ordered supplemental briefing. (Doc. No. 21.) Respondents filed their supplemental brief on February 2, 2026 (Doc. No. 24), and Petitioner filed his supplemental brief on February 6, 2026 (Doc. No. 25). The case was referred back to this Court, and on March 27, 2026, Petitioner filed a motion to expedite. (Doc. No. 26.) The petition is fully briefed and ripe for the Court's review.

## II.   LEGAL STANDARD

"[T]he writ of habeas corpus remains available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). A prisoner is entitled to habeas relief if he "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3). "The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings." Serrano-Alberto v. Att'y Gen. United States, 859 F.3d 208, 211 (3d Cir. 2017).

## III.   DISCUSSION

The parties agree that Petitioner is an "applicant for admission" under 8 U.S.C. 1225(b). (Doc. No. 13 at 10; Doc. No. 25 at 2.) Such applicants are subject to expedited removal unless they indicate an intention to apply for asylum or a fear of persecution. See 8 U.S.C.

1225(b)(1)(A).  An applicant like Petitioner who indicates an intention to apply for asylum or a fear of persecution is entitled to an interview by an asylum officer, and if the applicant demonstrates a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum."  See 8 U.S.C. 1225(b)(1)(B)(ii).  However, as occurred here, DHS may grant humanitarian parole and release the individual from detention.  See 8 U.S.C. § 1182(d)(5)(A).

Respondents argue that the Court "lacks jurisdiction to review the [] discretionary decision to revoke the Petitioner's parole," because "the statute specifically commits action to the discretion of the Secretary," and therefore the APA does not permit judicial review.  (Doc. No. 13 at 12–13); see also 5 U.S.C. § 701(a)(1) ("This chapter applies . . . except to the extent that . . . agency action is committed to agency discretion by law").  However, the Court agrees with various courts that have addressed this issue in finding that, although the decision to revoke parole is a discretionary one, the process for termination is in fact reviewable.  As one court articulated:

> Here, the decision committed to agency discretion is the determination that the purposes of parole have been served. This determination would be shielded from judicial review. The termination of parole, however, is not a matter of agency discretion but rather an event that follows automatically from the decision that parole is no longer warranted. Thus, although the court may not review the antecedent decision, it may review the termination of parole to determine whether, as required by statute, it followed a decision by the Secretary that the purposes of parole had been served.

See Doe v. U.S. Department of Homeland Security, No. 25-cv-12245, 2026 WL 880442, at *12 (D. Mass. Mar. 31, 2026); see also Y-Z-L-H v. Bostock, 792 F. Supp. 3d 1123, 1141 (D. Or. 2025) (finding that "the Review Statute and the Parole Statute do not preclude this District Court from reviewing whether the decision to terminate Petitioner's parole was lawful").  The Court turns to its assessment of Petitioner's claims.

5

A.    **Statutory and regulatory claims**

Petitioner claims that Respondents' revocation of Petitioner's humanitarian parole was in violation of the statute authorizing grants of parole—8 U.S.C. § 1182(d)(5)—and the corresponding regulations at 8 C.F.R. § 212.  (Doc. No. 1 at 38.)  It is a "long-settled principle that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency."  See Leslie v. Att'y Gen. of U.S., 611 F.3d 171, 175 (3d Cir. 2010).  "An action taken in disregard of mandatory regulatory prerequisites is unlawful and fundamentally unfair."  Marcano v. Jamison, No. 26-cv-00239, 2026 WL 196504, at *2 (E.D. Pa. Jan. 26, 2026).  The statute governing parole, Section 1182(d)(5)(A), states that:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

See 8 U.S.C. § 1182(d)(5)(A).  The corresponding regulation requires written notice of termination of parole:

> In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that

6

the alien be continued in custody.

See 8 C.F.R. § 212.5(e)(2)(i).

Petitioner argues that Respondents failed to satisfy the legal notice requirements, asserting that the arrest "warrant contains no information pertaining to parole or ICE's revocation of parole." (Doc. No. 14 at 5.)  Respondents assert in response that "ICE [] met the requirements of the INA and federal regulations by serving the Petitioner with documentation indicating that his parole had been revoked on the date he was taken into custody." (Doc. No. 13 at 7.)  Specifically, Respondents state that on the day Petitioner was re-detained, he was served with a warrant for his arrest, a warrant of removal, and a copy of his removal order decided in absentia.  (Id. at 8.)  Respondents attach the documents as exhibits (Doc. Nos. 13-4, 13-5, 13-6), but do not supply a declaration or point the Court to other record evidence demonstrating that the documents were served on Petitioner.  Furthermore, the documents do not mention Petitioner's parole.

Respondents were obliged, under the applicable regulation, to provide written notice upon termination of Petitioner's parole.  See 8 C.F.R. § 212.5(e)(2)(i).  The Court finds that Respondents failed to properly provide written notice here.  Written notice can be satisfied through service of a charging document, which "will constitute written notice of termination of parole."  See id.  "Charging document means the written instrument which initiates a proceeding before an Immigration Judge."  8 C.F.R. § 244.1.  As relevant here, "these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."  See id.  Here, Respondents assert that, "Petitioner received written notice on the date that [he was] taken into custody" (Doc. No. 13 at 9), citing the notice of arrest and notice of removal.  See (Doc. Nos. 13-5, 13-6.)  Petitioner disputes, via a

declaration, that he was ever served with his warrant of arrest. See (Doc. No. 14 at 7). By contrast, Respondents do not support their assertions that "officers served [Petitioner] with a warrant for their arrest" and that "ICE [] served [Petitioner] with a Warrant of Removal" with any declaration or other citation to the record. (Doc. No. 13 at 4.) Furthermore, it is not clear, and Respondents do not specifically argue, that either the notice of arrest or notice of removal constitute charging documents under the applicable regulations—and there is no other evidence in the record to suggest that Petitioner was properly served with a charging document or other written notice. As stated above, Respondents point to no evidence that any of the cited documents mention Petitioner's parole or its revocation, and they supply no declaration to support the assertion that the documents were served upon Petitioner. See Alcide v. de Anda-Ybarra, No. 1:26-cv-00249, 2026 WL 622663, at *4 (D.N.M. Mar. 5, 2026) (stating that "the Court finds no indication that Petitioner received any charging document that sufficiently qualifies as written notice terminating his parole"); see also Araujo v. LaRose, No. 25-cv-02942, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (finding that "[b]ecause Respondents did not revoke Petitioner's parole in accordance with Section 1182(d)(5)(A) or due process, the Court will grant the writ"); Torres v. Hermosillo, No. 2:25-cv-02687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026) (stating that "Respondents have also put forth no evidence that a relevant official opined that 'the purpose for which parole was authorized' has been accomplished or that 'neither humanitarian reasons nor public benefit warrants the continued presence' of [the petitioner]") (quoting 8 C.F.R. § 212.5)). The Court thus finds that Respondents have failed to comport with the applicable statute and regulation in revoking Petitioner's parole. See N- N- v. McShane, 813 F. Supp. 3d 496, 502 (E.D. Pa. 2025) (finding that "ICE has failed to follow its own administrative adjudicatory process" and "ICE's failure to follow its own rules bears

heavily on N- N-'s procedural rights and individual liberties").

Petitioner argues that his parole termination without the requisite process also violates the APA. (Doc. No. 1 at 39–40.) For support, Petitioner cites to Y-Z-L-H, in which the court found that "by denying Petitioner the required procedure before purporting to terminate his parole, Respondents acted arbitrarily and capriciously and violated the APA." See Y-Z-L-H, 792 F. Supp. 3d at 1146. Petitioner further argues that "Respondents' failure to justify their change in position"—having initially found Petitioner suitable for parole—constitutes arbitrary and capricious action. (Doc. No. 14 at 12.) In Y-Z-L-H, the court found that Respondents failed to meet their "burden to provide [a] reasoned explanation for [their] action" in departing from their initial decision to grant parole. See Y-Z-L-H, 792 F. Supp. 3d at 1146. Because the Court has already determined supra that Respondents violated the applicable statutory and regulatory scheme in revoking Petitioner's parole without proper notice, it need not decide whether Respondents also violated the APA.[3] However, the Court finds persuasive the decisions of other courts that have, in similar circumstances, found such revocation to violate the APA. See Noori v. LaRose, 807 F. Supp. 3d 1146, 1168 (S.D. Cal. 2025) (finding that "[g]iven Respondents have not attempted to justify the revocation for Petitioner, this Court holds the Respondent has acted arbitrarily and capriciously in violation of the APA").

B.    Constitutional due process claims

Petitioner also argues that his detention violates the Fifth Amendment, asserting both that his detention has become unreasonably prolonged and that due process requires notice and a pre-

---

[3] Petitioner also argues that Respondents violated statutory and regulatory requirements because, "just as the decision whether to grant parole requires an individualized determination . . . so too does the decision to revoke a prior grant of humanitarian parole." (Doc. No. 14 at 10.) For the same reasons, the Court does not decide that question.

deprivation hearing before re-detention.  (Doc. No. 1 at 18, 28.)

The Third Circuit has held that "an alien lawfully present but detained under § 1226(c) can [] challenge his detention under the Due Process Clause."  See German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 210 (3d Cir. 2020); see also Patel v. O'Neil, No. 3:25-cv-02185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (stating that "it is undisputed that Petitioner is entitled to the protections of the Fifth Amendment's due process clause").  In German Santos, the Third Circuit articulated four non-exhaustive factors to consider in assessing whether detention has become unreasonable.  "The most important factor is the duration of detention."  German Santos, 965 F.3d at 211.  Beyond duration, "we consider whether the detention is likely to continue," "we look to the reasons for the delay," and "we ask whether the alien's conditions of confinement are meaningfully different from criminal punishment."  See id. (internal citations omitted).  Although the petitioner in German Santos was detained under § 1226(c), courts have consistently held that petitioners may also assert due process challenges against detention under § 1225(b).  See Pierre v. Doll, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (stating that "the Court agrees with the weight of authority finding that arriving aliens detained pre-removal pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable") (internal citations omitted).  In assessing such challenges, courts apply the German Santos factors.  See A.L. v. Oddo, 761 F. Supp. 3d 822, 826 (W.D. Pa. 2025) (stating that "[i]n assessing whether detention has become unreasonable, this Court sees no reason not to apply the same factors laid out in German Santos"); see also Mashchenko v. Rokosky, No. 25-cv-12387, 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026) (stating that "[l]ower courts in the Third Circuit have applied the German Santos factors in analyzing whether prolonged detention

10

under § 1225(b) violates due process").

Applying the German Santos factors to the instant case, the Court finds that Petitioner's detention has become unreasonably prolonged in violation of Petitioner's due process rights. The Court begins by assessing the duration of Petitioner's detention—the first and most important factor.  Petitioner was detained on March 14, 2025, more than thirteen (13) months ago.  (Doc. No. 13 at 4.)  There is no hard and fast rule with respect to duration, but "detention 'becomes more and more suspect' after five months."  See German Santos, 965 F.3d at 211 (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011)).[4]  Multiple district courts in the Third Circuit have found that durations shorter than thirteen (13) months weigh in favor of the petitioner.  See A.L., 761 F. Supp. 3d at 826 (holding that "Petitioner's prolonged detention for nearly ten months without a bond hearing has become unreasonable and violates due process"); see also C.B. v. Oddo, No. 3:25-cv-00263, 2025 WL 2977870, at *6 (W.D. Pa. Oct. 22, 2025) (finding that detention of more than ten months "weighs in favor of granting habeas relief"); J.G.J. v. Sage, et al., No. 3:26-cv-00706, 2026 WL 915576, at *10 (M.D. Pa. Apr. 3, 2026) (stating that "[p]etitioner has been detained for approximately one year and the Court finds that the duration of civil immigration detention favors relief at this time").  The Court finds that Petitioner's detention of approximately thirteen (13) months weighs in favor of relief.

Petitioner's likelihood of continued detention also weighs in his favor.  "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a

---

[4]  The Supreme Court, in Johnson v. Arteaga-Martinez, 596 U.S. 573 (2022), "abrogated the Third Circuit's holding in Guerrero Sanchez v. Warden York Cnty. Prison, 905 F.3d 208 (3d Cir. 2019), that Section 1231(a)(6) presumptively requires the Government to offer detained noncitizens bond hearings after six months of detention."  See Appiah v. Lowe, No. 3:24-cv-02222, 2025 WL 510974, at *5 (M.D. Pa. Feb. 14, 2025) (internal citations omitted).

11

bond hearing is unreasonable." German Santos, 965 F.3d at 211.  Here, the BIA accepted Petitioner's appeal of the IJ's denial of his asylum claim in December 2025, and Petitioner represents that as such his detention "is unlikely to end soon." (Doc. No. 18 at 1–2.)  The Court agrees, and other courts have reached the same conclusion in similar circumstances.  See Elyardo v. Lechleitner, No. 1:23-cv-01089, 2023 WL 8259252, at *3 (M.D. Pa. Nov. 29, 2023) (finding that the "likelihood of continued detention also weighs in favor of habeas corpus relief" where "it appears that Elyardo's detention could continue for many more months"); see also Akhmadjanov v. Oddo, No. 3:25-cv-00035, 2025 WL 660663, at *4 (W.D. Pa. Feb. 28, 2025) (finding in petitioner's favor where "[t]he issue of asylum is currently on remand from the BIA, and the process could extend for several months").

As to the third factor—the reasons for the delay—"we do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings."  See German Santos, 965 F.3d at 211.  This factor is neutral.  As in C.B., "the record does not support the conclusion that either party is responsible for the sort of unreasonable or bad faith delays contemplated by the Court of Appeals in German Santos."  See C.B., 2025 WL 2977870, at *7; see also Akhmadjanov, 2025 WL 660663, at *4 (finding that "this factor does not cut one way or the other").

The fourth and final factor—whether the conditions of confinement are meaningfully different from criminal punishment—weighs in favor of Petitioner.  Petitioner has been detained for approximately thirteen (13) months, during which time he reports that he has received "inadequate food," "inadequate medical care," and has "suffered two incidents of sexual assault." (Doc. No. 1 ¶¶ 49–50.)  Moreover, Petitioner is being held in Pike County—the same facility in which the petitioner in German Santos was detained.  See German Santos, 965 F.3d at

12

207.  The Court is persuaded that, as in German Santos, "[d]espite its civil label, [Petitioner's]

detention is indistinguishable from criminal punishment." See id. at 213.

On balance, and giving particular weight to the length of Petitioner's detention, the Court

finds that Petitioner's detention has become unreasonably prolonged in violation of his due

process rights.  The Court in German Santos articulated that the proper remedy for such violation

is to require a bond hearing at which "the Government bears the burden of proof . . . to justify

detention by clear and convincing evidence." See German Santos, 965 F.3d at 213.  "If it cannot,

it must release him." Id. at 214.  Accordingly, the Court finds that Petitioner is entitled to a

prompt bond hearing at which Respondents must justify Petitioner's detention by clear and

convincing evidence.[5]

### C.      Petitioner's request for costs under the Equal Access to Justice Act

Petitioner requests an award of "all costs incurred in maintaining this action, including

attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412"

("EAJA").  (Doc. No. 1 at 43.)  Respondents assert in response that this claim is premature,

arguing that "the determination of the merits of any EAJA award requires a motion or

application to be filed 30 days after final judgment." (Doc. No. 13 at 14.)  The party seeking an

award under the EAJA must follow certain procedures outlined in the statute:

> A party seeking an award of fees and other expenses shall, within thirty days of
> final judgment in the action, submit to the court an application for fees and other
> expenses which shows that the party is a prevailing party and is eligible to receive
> an award under this subsection, and the amount sought, including an itemized
> statement from any attorney or expert witness representing or appearing in behalf
> of the party stating the actual time expended and the rate at which fees and other
> expenses were computed. The party shall also allege that the position of the United

---

[5]  Because the Court will grant habeas relief on this basis, it will not address Petitioner's
additional due process claim. See J.G.J., 2026 WL 915576, at *9 (stating that "[b]ecause the
Court will grant habeas relief on alternative grounds, it need not address [petitioner's substantive
due process claim]").

States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

See 28 U.S.C. § 2412(b)(2)(B).  Because Petitioner has not yet filed the required application, the Court agrees with Respondents that the request for such award is premature.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's habeas petition in part.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

14