**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **F.M.S.,** | : | |
| **Petitioner** | : | **No. 1:25-cv-02061** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **CRAIG LOWE, et al.,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Before the Court is Petitioner F.M.S. ("Petitioner")'s motion to enforce the Court's April 24, 2026 Order granting his 28 U.S.C. § 2241 petition for a writ of habeas corpus challenging his immigration detention. (Doc. No. 31.) For the reasons that follow, the Court will grant Petitioner's motion.

## I. BACKGROUND[1]

Petitioner is a citizen of Venezuela. (Doc. No. 1 ¶ 20.) He is currently incarcerated at Pike County Correctional Facility in Lords Valley, Pennsylvania ("Pike County"). (Id. ¶ 45.) Petitioner asserts that, before fleeing Venezuela, he was subjected to imprisonment, torture, rape, and sexual abuse for his opposition to the regime of former President Nicolas Maduro. (Doc. No. 1 ¶¶ 20–31.) Upon his release from imprisonment in Venezuela, Petitioner fled the country. (Id. ¶¶ 32–35.) Petitioner arrived in the United States and presented himself at the Paso del Norte Port of Entry in El Paso, Texas in June or July 2023. (Id. ¶ 36, Doc. No. 13 at 2.) United

[1] The Court recites the facts as articulated by Petitioner in his petition (Doc. No. 1), accompanying exhibits (Doc Nos. 1-1 through 1-9), traverse (Doc. No. 14), and status report (Doc. No. 18), and by Respondents in their response (Doc. No. 13) and accompanying exhibits (Doc. Nos. 13-1 through 13-12), as well as the newly asserted facts in Petitioner's motion to enforce the Court's prior Order and accompanying exhibits (Doc. No. 31, 31-1–31-7, 35, 35-1–35-2) and Respondents' brief and exhibits in opposition (Doc. Nos. 39, 39-1–39-3). The facts are uncontested unless otherwise noted.

States Immigration and Customs Enforcement ("ICE") detained Petitioner at his appointment, processed him for expedited removal under 8 U.S.C. § 1225(b)(1), and issued an order of expedited removal. (Doc. No. 1 ¶ 37.) Petitioner was detained at the Otero County Processing Center in New Mexico. (Id. ¶ 37.)

On September 13, 2023, Petitioner was provided a credible fear interview and was found to have a credible fear of persecution. (Id.) In accordance with the credible fear determination, Petitioner was no longer subject to expedited removal, and the U.S. Department of Homeland Security ("DHS") issued to Petitioner a Notice to Appear, which charged him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Id.; Doc. No. 13 at 2.) On or about October 9, 2023, ICE released Petitioner from detention via a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5). (Id. ¶ 38.) Prior to his release, ICE fitted Petitioner with an ankle monitor, which he wore until ICE removed it in February 2025, and he appeared regularly for check-ins with DHS and shared weekly photographs throughout that time period. (Id. ¶¶ 38–39.) On October 24, 2024, an immigration judge issued a removal order in absentia after Petitioner did not appear for a hearing, although Petitioner asserts that he did not receive notice of the hearing and continued to comply with ICE check-in requirements after the in absentia order. (Id. ¶¶ 40–43; Doc. No. 13 at 3.)

On March 14, 2025, ICE took Petitioner into custody, and he has remained in ICE detention since that day. (Doc. No. 13 at 4.) On March 21, 2025, Petitioner filed a motion to reopen his removal proceedings. (Id. ¶ 46.) An immigration judge ("IJ") granted the motion on May 23, 2025, finding that Petitioner had not received proper notice of the October 2024 hearing. (Doc. No. 1 ¶ 46.) On November 5, 2025, an IJ granted Petitioner's application for withholding of removal but denied his application for asylum. (Doc. No. 13 at 5; Doc. No. 14 at

2.) On November 12, 2025, ICE served Petitioner a notice of third country removal and advised him that it intended to remove him to Mexico. (Id.)

Petitioner then filed a motion to reopen proceedings, which the IJ denied on December 3, 2025. (Doc. No. 14 at 2.) Petitioner filed a new motion to reopen proceedings the next day, and appealed the IJ's denial of asylum to the Board of Immigration Appeals ("BIA") on December 5, 2025. (Doc. No. 18 at 1.) The IJ denied Petitioner's second motion to reopen proceedings, but the BIA accepted Petitioner's appeal of the IJ's denial of asylum. (Id.) During Petitioner's detention, he reports that he has received "inadequate food," "inadequate medical care," and has "suffered two incidents of sexual assault." (Doc. No. 1 ¶ 49.) After a psychological evaluation in August 2025, a doctor concluded that he suffers from major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder stemming from his experiences in Venezuela and his time in detention at Pike County. (Id. ¶ 51.)

Petitioner filed a petition for writ of habeas corpus (Doc. No. 1) under 28 U.S.C. § 2241 asserting that the revocation of his parole and his re-detention violated the Immigration and Nationality Act ("INA") and corresponding regulations, the Administrative Procedure Act ("APA"), and Petitioner's constitutional due process rights. The petition was fully briefed, and on April 24, 2026, the Court granted the petition, determining, in part, that Petitioner's detention—at that time more than thirteen (13) months—had become unreasonably prolonged in violation of his due process rights. (Doc. No. 27.) The Court issued an order requiring that Respondents provide Petitioner an "individualized bond hearing, at which the government bears the burden of proof to justify Petitioner's continued detention by clear and convincing evidence."[2] (Doc. No. 28.)

---

[2] Upon finding that a petitioner's detention has become unreasonably prolonged in violation of

Petitioner's bond hearing before an IJ was set for May 4, 2026. (Doc. No. 39 at 2.) "Hours before the proceeding commenced, however, the Department of Homeland Security (DHS) submitted evidence," which included a Form I-213[3] that "had not been submitted during the removal proceedings." (Doc. No. 39 at 2–3.) ICE had filed two other I-213s in Petitioner's removal proceedings, but Petitioner asserts that he had "never been provided a copy of the March 2025 Form I-213 in either removal or custody proceedings," and that it "contained allegations that DHS had never raised in immigration court proceedings." (Doc. No. 31 at 23.) In particular, the I-213 stated:

> On March 14, 2025, New York City (NYC), Enforcement and Removal Operations (ERO) Officers responded to a call for assistance from the FBI Task Force in regard to [Petitioner]. [Petitioner] appeared to be foreign born which initiated FBI contact with ERO NYC to verify citizenship. At approximately 1643 hours, the FBI Task

---

his due process rights, the Third Circuit Court of Appeals instructs that the petitioner is entitled to a bond hearing at which the government must "put forth clear and convincing evidence that continued detention is necessary." See German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 213 (3d Cir. 2020). "[W]hen someone stands to lose an interest more substantial than money, we protect that interest by holding the Government to a higher standard of proof," and particularly in the detention context, because Petitioner's "potential loss of liberty is so severe . . . he should not have to share the risk of error equally." See id. at 213–14. The clear and convincing evidence standard has various articulations—each setting a consistently high bar—and requires at least sufficient evidence to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." See Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotations omitted); see also Antonio v. Progressive Ins. Co., 795 F. App'x 128, 133 (3d Cir. 2020) (unpublished) (internal citations omitted) (describing the "District Court's correct instruction on clear and convincing evidence," in which "[t]he District Court instructed the jury that clear and convincing evidence means that the evidence is so clear, direct, substantial that you are convinced without hesitation that a fact is true"); Galaviz v. Reyes, 95 F.4th 246, 256 (5th Cir. 2024) (internal quotations omitted) (stating that clear and convincing evidence is "a weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," and that it "is evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts. Mere speculation does not meet the clear and convincing burden").

[3] See Vera Punin v. Garland, 108 F.4th 114, 118 (2d Cir. 2024) (describing an I-213 as "the official record that immigration officials prepare when initially processing a person suspected of being in the United States without lawful permission").

> Force lead a Tren de Aragua (TDA) Gang Member investigation and executed a search warrant at 101 CLIFFORD PLACE BRONX, NY 10453, that housed TDA Gang Members. FBI Agents observed an individual that was later identified as [Petitioner] as an associate of Los Diablos de la 42, a crew linked to Tren de Aragua (TDA). FBI Agents approached and identified themselves, clearly displaying their badges and asked the individual for her true name. The individual then freely stated her true name is [Petitioner]. At approximately 2030 hours, NYC ERO Officers positively identified [Petitioner] through a series of pedigree questions. At approximately 2030 hours, FBI Agents turned the individual over to NYC ERO Officers and [Petitioner][]was arrested without incident pursuant to a Warrant for Arrest of Alien (Form I200).

(Doc. No. 35-1 at 2.)

The IJ "granted a brief continuance [of the bond hearing] to May 7, 2026, to allow for Petitioner's counsel to review the document and submit any rebuttal evidence." (Doc. No. 39 at 3.) At the hearing, DHS questioned Petitioner "regarding his single arrest and ICE's gang allegations," to which Petitioner testified "that he had been arrested following his purchase of a motorcycle that had been previously stolen, and that the police dropped the charges on the basis that [Petitioner] was in ICE custody at the time the motorcycle had been stolen," and further that he had never been a gang member. (Doc. No. 31 at 29.) The IJ asked why counsel for DHS had not filed "a rap sheet in this case," to which DHS replied that "actually that arrest is not indicate[d], reflected in his rap sheet. That's why I did not submit a rap sheet." (Doc. No. 31-3 at 10.) At the conclusion of the hearing, The IJ ruled orally that:

> The court does find that the respondent has demonstrated through the detailed, uh, section in its I-213 that the respondent would pose a danger to the community and given his apparent association, associations with a designated terrorist group, the court would also find that the respondent would potentially pose a danger to the national security of the United States. For that reason, the court will be denying the respondent's bond this morning.

(Id. at 20.) The IJ issued a subsequent written ruling denying bond and stating that:

> [t]he court held a bond hearing with the burden of proof on the Department as directed by the District Court. The bond is denied because the court has found that the Department has met its burden to establish that the respondent poses a danger

> to the community and also likely a danger to national security based upon his ties to Tren de Aragua, a Designated Foreign Terrorist Organization.

(Doc. No. 31-2 at 1.) Petitioner filed the instant motion to enforce the Court's earlier Order granting the writ of habeas corpus, arguing that Petitioner's hearing did not comply with the Court's Order and violated Petitioner's due process rights.[4] (Doc. No. 31.) Petitioner seeks his immediate release, or in the alternative, that this Court hold a hearing to determine appropriate conditions of release. (Id. at 82.) The motion is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

"[T]he writ of habeas corpus remains available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). A prisoner is entitled to habeas relief if he "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3). "The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings." Serrano-Alberto v. Att'y Gen. United States, 859 F.3d 208, 211 (3d Cir. 2017). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the

[4] Petitioner also filed a motion to seal (Doc. No. 32) two documents (Doc. Nos. 35-1, 35-2). On November 18, 2025, Magistrate Judge Schwab, to whom this case was previously assigned, granted Petitioner's motion to proceed using only his initials and to redact his alien registration number. (Doc. No. 12.) In support of that motion, Petitioner articulated his "safety and privacy interests in light of his genuine fear of persecution and torture in Venezuela due to his political opinion." (Doc. No. 3 at 6.) Petitioner now seeks to file under seal two I-213s—one pertaining to him and one pertaining to his brother—because Petitioner and his brother share the same initials, the documents are substantially similar, and redaction with use of initials only could cause confusion. (Doc. No. 35.) Upon careful consideration, the Court finds that Petitioner has overcome the presumptive right of public access to judicial records under In re Avandia Marketing, Sales Practices & Products Liability Litigation, 924 F.3d 662 (3d Cir. 2019) and will grant Petitioner's motion. The Court accords significant weight to Magistrate Judge Schwab's earlier decision to grant Petitioner's motion to proceed using his initials only, and the Court also notes that Petitioner discusses and quotes the substance of the I-213s in his motion to enforce, see generally (Doc. No. 31), accordingly, the infringement upon public access to these records is largely limited to biographical information and is therefore minimal.

Fifth Amendment Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"The Supreme Court 'has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.'" Henderson v. Frank, 155 F.3d 159, 168 (3d Cir. 1998) (quoting Hilton v. Braunskill, 481 U.S. 770, 775 (1987)). This is referred to as a conditional writ—"[t]he conditional nature of the order provides the state with a window of time within which it might cure the ... error." See Haskell v. Folino, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (internal quotations omitted). "[S]everal courts of appeals, including the Third Circuit Court of Appeals, have concluded that district courts retain jurisdiction to determine whether a respondent has complied with the terms of a conditional order granting habeas relief." Shonhai v. Lowe, No. 24-cv-00229, 2026 WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (collecting cases); see also Wilkins v. Doll, No. 17-cv-02354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018) (finding that "[t]here is no question that this court has the power to enforce its writs of habeas corpus").

## III. DISCUSSION

Petitioner asserts that his bond hearing failed to comply with this Court's Order granting the writ of habeas corpus and with Petitioner's due process rights. Respondents argue that the Court lacks jurisdiction to review the IJ's decision, and furthermore that Petitioner has not exhausted his administrative remedies. Alternatively, Respondents assert that Petitioner's hearing and the IJ's ruling complied with the Court's Order and with due process. The Court will discuss the issues of jurisdiction and exhaustion before turning to the merits of Petitioner's motion.

**A. Jurisdiction**

As stated above, courts retain jurisdiction to enforce their conditional writs of habeas corpus. See Shonhai, 2026 WL 538865, at *6. However, Respondents argue that, under 8 U.S.C. § 1226(e), "this Court is prohibited from setting aside the immigration court's bond determination." (Doc. No. 39 at 5.) The provision states that:

> [t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

See 8 U.S.C. § 1226(e). Still, "[a]lthough § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011); see also Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013) (collecting cases). "Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair." Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) (unpublished)[5]; see also Collado Nunez v. Oddo, No. 25-cv-00143, 2026 WL 1170973, at *6 (W.D. Pa. Apr. 30, 2026) (analyzing the interplay between 8 U.S.C. § 1226(e) and Ghanem and determining that, "[a]pplying this direction from the Third Circuit, this Court concludes that it retains jurisdiction to review the bond hearing for fundamental fairness").

The Court is persuaded by the reasoning in Ghanem and of the other decisions finding that courts retain jurisdiction to review bond hearings for fundamental fairness. See A.D. v.

[5] The Third Circuit has acknowledged that its unpublished opinions may contain persuasive reasoning. See New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010).

Oddo, No. 25-cv-00460, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026) (finding that "this Court retains jurisdiction to review the bond hearing for fundamental fairness"); see also Cepeda v. Shanahan, No. 15-cv-09446, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) (stating that, "[t]o the extent Cepeda complains that his bond hearing was constitutionally deficient—that is, that the government's evidence could not, as a matter of law, establish clearly and convincingly that Cepeda was dangerous, and therefore he was not accorded the process he is due—he can seek redress from this Court"); Santos v. Lowe, No. 18-cv-01553, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 6, 2020) (finding that "district courts have continuing jurisdiction to address alleged noncompliance with writs of habeas corpus"). Accordingly, the Court will review whether the bond hearing complied with the Court's conditional grant of habeas corpus and with Petitioner's due process rights. First, though, the Court turns to the question of administrative exhaustion.

**B. Exhaustion of Administrative Remedies**

Respondents also assert that Petitioner's motion should be denied because he has failed to exhaust his administrative remedies. (Doc. No. 39 at 6.) Respondents state that Petitioner "may seek review of [the] determination with the [Board of Immigration Appeals ("BIA")]," and that "the Court should not consider Petitioner's motion because he has not fully exhausted his administrative remedies by completing that appeal." (Id.) The Court disagrees.

In this context, "the exhaustion requirement imposed by courts relating to habeas corpus petitions filed by immigration detainees is a prudential benchmark which is not compelled by statute." See Santos, 2020 WL 4530728, at *2. In that case, where the petitioner's "detention ha[d] become unreasonably long," the court disagreed "that Petitioner should be required to pursue an appeal with the BIA before returning to this Court and requesting enforcement of its

judgment." See id.; see also Collado Nunez, 2026 WL 1170973, at *6 (finding that "there is nothing left for Petitioner to exhaust" and "to the extent that any exhaustion issue can be contrived from the procedural posture of this case, exhaustion in this context is not mandatory; instead, it is prudential, and may be excused"). Because the Court concludes that Petitioner need not exhaust his administrative remedies before pursuing relief in this forum, the Court will turn to the merits of his motion.

**C. Whether the Bond Hearing Complied with the Court's Order and Petitioner's Due Process Rights**

The Ghanem court articulated that:

> [i]n a fundamentally fair bond hearing, due process has three essential elements. "An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests."

See Ghanem, 2022 WL 574624, at *2 (quoting Kamara v. Att'y Gen. of U.S., 420 F.3d 202, 211 (3d Cir. 2005)). As for the third element, "[t]o determine whether a bond hearing was individualized, courts look first to whether the immigration judge committed plain legal error by misidentifying or misapplying the relevant legal precepts." See Romero v. Ogle, No. 21-cv-01192, 2021 WL 8362027, at *2 (M.D. Pa. Nov. 12, 2021). Further, when the government claims that a petitioner is a flight risk or danger to the community, "the immigration judge must do more than '[r]ubberstamp denials [of bond] based on temporally distant offenses.'" See id. (citing Chi Ton Ngo v. Immigr. and Nat'y Servs., 192 F.3d 390, 398 (3d Cir. 1999)). Moreover, "the immigration judge must look to the recency and severity of the offenses to determine whether a denial of bond is warranted." See id. (internal quotations omitted).

Petitioner argues that his bond hearing was fundamentally unfair in violation of his due process rights because the IJ "misidentified and misapplied the controlling legal precepts,

rubberstamped a denial based solely on wholly unsubstantiated and specious allegations of association with gang members, and entirely failed to consider the evidence proffered by F.M.S., including his testimony." (Doc. No. 31 at 37.) In particular, Petitioner asserts that the IJ committed clear error by "fail[ing] to hold DHS to its appropriate burden [of clear and convincing evidence]" because it cannot meet such burden "only by establishing a possibility that the individual poses a danger." (Id. at 37, 39). Further, Petitioner argues that "in basing his denial of bond solely on the allegations contained in [the I-213], the IJ clearly failed to adhere to this Court's burden allocation and standard of proof." (Id. at 40.) Petitioner states that "Forms I-213 are largely sourced from hearsay . . . and are not prepared under oath." (Id. at 41.) Further, "Forms I-213 should not be deemed presumptively reliable because they are no longer analogous to documents meeting the [evidentiary] public records exception," and instead they are "prepared by ICE agents in adversarial, investigatory context[s] and are most analogous to police reports." (Id. at 58.) As applied here, Petitioner asserts that the accusations in the contested I-213—that Petitioner was observed to be "an associate of Los Diablos de la 42"—"clearly cannot, standing alone, form the basis of a clear-and-convincing showing that [Petitioner] poses a danger to the community." (Id. at 63.) In support, Petitioner cites to several cases urging caution or according little weight to arrest reports, charging documents, and indictments. See (id. at 64–66).

Respondents argue in response that "the immigration court considered the evidence submitted, allowed for both parties to make their arguments, and ultimately concluded that bond was not appropriate because the Petitioner was a danger to the community and also likely a danger to national security based upon his ties to Tren de Aragua, a Designated Foreign Terrorist Organization." (Doc. No. 39 at 10) (internal quotations omitted). Respondents also argue that Petitioner's argument that the bond hearing was fundamentally unfair fails under Ghanem. (Id.

at 11.) Respondents assert that "Judge Combs went out of his way to note that the burden was upon DHS to justify continued detention based on clear and convincing evidence, and Judge Combs held DHS to such a standard." (Id. at 14.) In particular, "Judge Combs found that the detailed section [of the I-213] related to the Federal Bureau of Investigation's execution of a search warrant related to Tren de Aragua at a location where the Petitioner was present was sufficient evidence to meet the clear and convincing standard." (Id. at 14–15.) Respondents argue that "Petitioner's arguments here ultimately are a disagreement on how Judge Combs assessed the evidence and ultimately drew his conclusions on that evidence." (Id. at 16.)

Upon careful consideration of the parties' briefs, the record, and the applicable law, the Court finds that Petitioner's bond hearing was fundamentally unfair and violated Petitioner's due process rights.[6] As stated above, the inquiry as to whether the bond hearing was individualized points the Court to "look first to whether the immigration judge committed plain legal error by misidentifying or misapplying the relevant legal precepts." See Romero, 2021 WL 8362027, at *2. The basis for the IJ's ruling in the instant matter was the I-213 statement regarding Petitioner's alleged association with a crew that was linked to Tren de Aragua. As the IJ stated:

> The court does find that the respondent has demonstrated through the detailed, uh, section in its I-213 that the respondent would pose a danger to the community and given his apparent association, associations with a designated terrorist group, the

---

[6] The Court does not reach this result lightly, and is cognizant of the limited role of a reviewing court in this context. See Ghanem, 2022 WL 574624, at *3. However, as other courts have articulated, although this Court may not reweigh evidence, it is authorized to determine whether Petitioner's bond hearing—and the basis for the IJ's decision—could, as a matter of law, meet the requisite burden to satisfy Petitioner's due process rights. See Nguti v. Sessions, No. 16-cv-06703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017) (describing "the difference between reviewing an immigration judge's determination for constitutional soundness—a determination to which a petitioner is entitled, as opposed to evidentiary soundness—a determination beyond the jurisdiction of district courts"); see also Miti v. Moniz, 827 F. Supp. 3d 206, 211 (D. Mass. 2026) (ordering the petitioner's release where the IJ "denied bond based on a single piece of evidence: a police report . . . Because the Court concludes that this was insufficient, as a matter of law, to support the immigration judge's finding").

> court would also find that the respondent would potentially pose a danger to the national security of the United States. For that reason, the court will be denying the respondent's bond this morning.

(Doc. No. 31-3 at 20.) Respondents state in their brief that the I-213 "alleged that the Petitioner was a member of Tren de Aragua." (Doc. No. 39 at 2.) However, the Court notes that Respondents overstate the I-213, which states instead that Petitioner was "observed . . . as an associate of Los Diablos de la 42, a crew linked to Tren de Aragua." (Doc. No. 35-1 at 3.) There is no explanation of what it means, in this context, to be observed to be an associate of a crew linked to Tren de Aragua, and no assertion that Petitioner himself was tied to Tren de Aragua. There is also no indication, even accepting the statement as true, that Petitioner was charged with a crime in relation to this activity, or engaged in any specific unlawful or dangerous conduct, and Respondents did not proffer any further evidence or offer any witnesses to bolster the allegation at the hearing. See generally (Doc. No. 31-3). As Petitioner articulates, "were ICE to now be making those allegations seriously," it "should have raised and substantiated them in removal proceedings, as association with Tren de Aragua . . . would trigger a bar to eligibility for asylum and withholding of removal." (Doc. No. 31 at 45.) Instead, "the Form I-213 that ICE filed in [Petitioner's] removal proceedings wholly omitted that allegation," despite that the form was prepared "nearly eight months before the IJ's decision granting [Petitioner] withholding of removal." (Id.) Even Respondents, in their response to Petitioner's petition for writ of habeas corpus, stated that "[t]here is no current allegation that [Petitioner] is a member of [Tren de Aragua], and the undersigned has had no discussions with law enforcement regarding that investigation or its knowledge of [Petitioner]." (Doc. No. 13 at 4 n.5.) Based on the above, the IJ's stated ground for denying bond to Petitioner was not, as a matter of law, founded on evidence sufficient to "place in the ultimate factfinder an abiding conviction that the truth of its

factual contentions are highly probable." See Colorado, 467 U.S. at 316. Nor does it constitute "evidence [that] is so clear, direct, [and] substantial that you are convinced without hesitation that a fact is true." See Antonio, 795 F. App'x at 133 (cleaned up); see also Galaviz, 95 F.4th at 256 (internal quotations omitted) (stating that clear and convincing evidence "is evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts. Mere speculation does not meet the clear and convincing burden").[7] Petitioner also rightly points out that "DHS presented no evidence that the FBI's allegations even formed the basis for probable cause to justify an FBI arrest; instead, [Petitioner] was arrested by ICE," "Petitioner was not charged with a crime," "and indeed was not even alleged to have belonged to the gang himself." (Doc. No. 31 at 67.) Therefore, as Petitioner argues, the I-213 does not even reflect that "the low[er] standard of probable cause was satisfied [] in relation to its gang association allegations." (Id.)

In accordance with the above, the Court finds that, under Ghanem, Petitioner's bond hearing was not individualized because the IJ committed "plain legal error by misidentifying or misapplying the relevant legal precepts." See Romero, 2021 WL 8362027, at *2; see also Alfaro Cruz v. Bernacke, No. 26-cv-00080, 2026 WL 1414096, at *3 (D. Nev. May 20, 2026) (determining that the IJ's finding with respect to flight risk was insufficient to meet the government's burden as a matter of law and stating that "the IJ adopted that argument in determining Petitioner was a flight risk. That fact alone, however, was, as a matter of law, insufficient to justify the denial of bond"); Ezeagwuna v. Ashcroft, 325 F.3d 396, 408 (3d Cir.

---

[7] Petitioner also argues that the IJ did not accord proper weight to Petitioner's testimony and the evidence he offered at the bond hearing. See (Doc. No. 31 at 68–74). The Court will not reweigh this evidence or make credibility determinations. See Ghanem, 2022 WL 574624, at *3 (stating that "this amounts to an allegation of improper evidence weighing, and this is not within our authority to consider").

2003) (finding that the "BIA violated [the petitioner's] due process rights by basing its credibility finding almost entirely on [a] letter, [which] appears neither reliable nor trustworthy"). The Court reiterates that "the question here is not whether this Court believes that the proof establishes, by clear and convincing evidence, that [Petitioner] is a danger to the community," but instead "whether the immigration judge relied upon proof that could not possibly establish by clear and convincing evidence—as a matter of law—that [he] is a danger to the community." See Nguti, 2017 WL 5891328, at *2. Courts have found that even denials of bond based upon actual convictions, when those convictions were distant enough in time, fail to satisfy due process. See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398–99 (3d Cir. 1999) (stating that "[d]ue process is not satisfied [] by rubberstamp denials based on temporally distant offenses," and "[t]o presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process"); see also Collado Nunez, 2026 WL 1170973, at *9 (stating that "DHS relied solely on the bare record of temporally distant convictions," and finding that, given "the lack of evidence of any dangerous activity by Petitioner in the nearly five years that he remained at liberty . . ., coupled with the absence of evidence of any violence or disciplinary infraction . . . DHS failed to meet its burden and establish by clear and convincing evidence that Petitioner is a current danger"); Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 241 (W.D.N.Y. 2019) (stating that, "[i]f the clear and convincing standard means what it says, it cannot permit detention based on mere speculation that an alien's release might possibly pose a danger"). The IJ's basis for denying bond in the hearing at issue here was even more thin and tenuous than in the cases cited above.

Multiple courts of appeals have found that due process requires that the government be held to a heightened standard in circumstances like those presented here. See German Santos,

965 F.3d at 214 (articulating that "when a party stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof"); see also Hernandez-Lara v. Lyons, 10 F.4th 19, 39 (1st Cir. 2021) (quoting Addington v. Texas, 441 U.S. 418, 425, (1979)) (stating that "[i]n detention cases, applying a heightened 'standard of proof ... reflects the value society places on individual liberty'"); Singh, 638 F.3d at 1203 (finding that, "[g]iven the substantial liberty interest at stake . . . we hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"). Few courts have articulated specifically how, though, a court is to determine whether the IJ truly held the government to that standard. See Collado Nunez, 2026 WL 1170973, at *9 (finding the bond hearing fundamentally unfair but describing that "the arguments in the Motion come close to asking this Court to" reweigh the evidence "presented at the bond hearing").[8] The Court here recognizes the difficulty of this exercise and notes the fine line between a review for constitutional sufficiency and one that reweighs the evidence. However, the Court is persuaded that, if a heightened standard is required by due process, the Court must conduct some review for compliance with this constitutional requisite. Having undertaken this review, the Court finds that, as a matter of law, the IJ did not hold the government to the necessary standard. Adherence to the standard is paramount where, as here, Petitioner's "potential loss of liberty is so severe . . . he should not have to share the risk of error equally." See German Santos, 965 F.3d at 213–14;

---

[8] The Court also acknowledges that other courts have resolved differently the question of how searching the inquiry can be into an IJ's ruling. See Shonhai, 2026 WL 538865, at *13 (finding that "the IJ's Memorandum is thorough and comprehensive, and it demonstrates that the IJ conducted an individualized review of Shonhai evidence and, to the extent that he argues otherwise, the Court cannot consider this argument"); see also Nguti, 2017 WL 5891328, at *3 (finding that, although "a rap sheet alone, in certain contexts, cannot constitute clear and convincing evidence of a conviction," it, together "with the admission by Nguti's counsel that Nguti indeed had been convicted of the DUIs . . . might well constitute clear and convincing evidence").

cf. Zadvydas, 533 U.S. at 690 (stating that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment Due Process] Clause protects").

Accordingly, the Court will grant Petitioner's motion and will order Petitioner to be immediately released from custody. See Zheng v. Rokosky, 826 F. Supp. 3d 545, 560 (D.N.J. 2026) (finding that "the only just remedy in these circumstances is immediate release"); see also Rose v. Guyer, 961 F.3d 1238, 1246 (9th Cir. 2020) (stating that, "if a state fails to cure the constitutional error, i.e., when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus requires the petitioner's release from custody"); Salazar-Lopez v. Mullin, No. 26-cv-00871, 2026 WL 1414066, at *3 (D. Nev. May 20, 2026) (finding that, after a bond hearing did not cure the constitutional defect that warranted the initial grant of the writ of habeas corpus, "Petitioner is entitled to release on personal recognizance").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's motion. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania